UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

BOUNLAY SIACKASORN,

                    Petitioner,

          v.

MARKWAYNE MULLIN, *et al.*,

                    Respondents.

CASE NO. 2:26-cv-01485-GJL

ORDER DENYING PETITION FOR
WRIT OF HABEAS CORPUS AND
MOTION FOR TEMPORARY
RESTRAINING ORDER

Petitioner Bounlay Siackasorn is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. Dkt. 1. Petitioner, through counsel, filed a Petition for writ of habeas corpus under 28 U.S.C. § 2241, seeking immediate release from custody. Dkt. 1. The Petition has been fully briefed and is ripe for consideration by the Court.[1] Dkts. 1, 11, 14. The Petitioner also moves for a Temporary Restraining Order ("TRO") to stay his removal pending these habeas proceedings. Dkt. 2.

---

[1] The parties have consented to proceed in this matter before a United States Magistrate Judge. Dkt. 7.

ORDER DENYING PETITION FOR WRIT OF
HABEAS CORPUS AND MOTION FOR
TEMPORARY RESTRAINING ORDER - 1

Having considered the parties' submissions, the balance of the record, and the governing law, the Court **DENIES** Petitioner's habeas Petition. Dkt. 1. The Court also now **DENIES** Petitioner's Motion for TRO (Dkt. 2) as **MOOT**.

## I.    FACTUAL BACKGROUND

Petitioner is a 49-year old non-U.S. citizen. Dkt. 1 ¶ 1. He is a refugee from the Lao People's Democratic Republic ("Laos") but holds no birth certificate or evidence of Lao citizenship, and asserts he should be considered stateless. Dkt. 1 ¶¶ 1–2; Dkt. 11 at 4. Petitioner was brought to the United States in 1980, when he was approximately three or four years old. Dkt. 1 ¶¶ 2–3.

After Petitioner became a legal permanent resident soon after entry to the U.S., he faced a number of arrests and convictions in California as a teenager and young adult, including a February 21, 2007, conviction for possession with intent to sell methamphetamine. Dkt. 12 ¶ 5 (Britt Decl.).

On July 9, 2007, ICE's Office of Enforcement and Removal Operations ("ERO") issued a Notice to Appear ("NTA"), charging Petitioner as removable under Section 237(a)(2)(A)(iii), 8 U.S.C. § 1227(a)(2)(A)(iii), of the Immigration and Nationality Act ("INA"). Dkt. 12 ¶ 6; Dkt. 13-1, Ex. 1.[2] On July 17, 2007, ERO served Petitioner the NTA, Notice of Custody Determination (Form I-286), and Warrant of Alien Arrest (Form I-200), and placed him in ICE custody. Dkt. 12 ¶ 7. On August 8, 2007, an Immigration Judge ("IJ") in Eloy, Arizona, ordered Petitioner removed to Laos. *Id*. ¶ 8. That order of removal became final on August 8, 2007, as

---

[2] The NTA filed as Exhibit 1 to the Declaration of Assistant U.S. Attorney Alixandria Morris is one page and does not have the "continuation page" listing the basis for the removability charge. Dkt. 13-1, Ex. 1.

ORDER DENYING PETITION FOR WRIT OF
HABEAS CORPUS AND MOTION FOR
TEMPORARY RESTRAINING ORDER - 2

Petitioner waived his right to appeal. *Id*. Petitioner was held in ICE detention for approximately three (3) months thereafter. *Id*. ¶ 9.

On November 5, 2007, Petitioner was released on an Order of Supervision ("OSUP"), after ERO determined Petitioner's removal to Laos was not reasonably foreseeable. *Id*. On March 9, 2011, ERO issued Petitioner a new OSUP. *Id*. ¶ 10. According to Respondents, on March 31, 2011, Petitioner violated the terms of that OSUP based on a March 31, 2011, arrest in Tillamook County, Oregon, for burglary in the second degree and related charges.[3] *Id*. ¶ 11.

On June 30, 2011, ERO placed Petitioner in ICE custody based on the March 2011 arrest. Dkt. 12 ¶ 12. However, ERO released Petitioner on an OSUP that same day due to a lack of bedspace at NWIPC. *Id*. Per the conditions of that OSUP, Petitioner was to report to ICE when scheduled for a check-in. *Id*.

For over fourteen (14) years, Petitioner complied with this OSUP and checked in annually with immigration officials in Portland, Oregon, where he has lived since 2001. Dkt. 1 ¶ 5. However, on January 22, 2026, Petitioner missed his scheduled check-in. Dkt. 12 ¶ 13.

On February 2, 2026, Headquarters for Removals and International Operations ("HQ RIO") received a travel document for Petitioner from the Laos government, which Respondents assert was valid for ninety (90) days from January 30, 2026. Dkt. 12 ¶ 14. In this travel document, however, Petitioner's name was incorrectly spelled and contained a different date of birth. *Id*.; Dkt. 13-7, Ex. 7.

---

[3] Respondents assert Petitioner was convicted of those charges on January 12, 2012. Dkt. 12 ¶ 11. In his Traverse, Petitioner disputes that his last arrest for immigration detention purposes was on March 31, 2011. Dkt. 14 at 4. Instead, Petitioner asserts his 2012 conviction did not result in his being held in immigration detention, and thus he has been in compliance with his OSUP for nearly twenty (20) years. Dkt. 1 ¶ 5. Because Petitioner concedes that he was released from ICE custody in 2011 due to lack of bedspace at NWPIC (*see* Dkt. 14 at 5), for purposes of disposition of this Petition, the Court will use the 2011 date as the issuance of his latest OSUP.

ORDER DENYING PETITION FOR WRIT OF
HABEAS CORPUS AND MOTION FOR
TEMPORARY RESTRAINING ORDER - 3

On April 3, 2026, ERO sent Petitioner a call-in letter asking him to come to the ERO office in Portland on April 17, 2026. *Id*. ¶ 15. Petitioner failed to report to the ERO office on that day. *Id*. But Petitioner did report to the ERO office on April 20, 2026. *Id*. ¶ 16. During that visit, Petitioner was informed that his OSUP had been revoked.[4] *See* Dkt. 13-5 at 2, Ex. 5. The Notice of Revocation of Release, served on Petitioner on April 20, 2026, states that Petitioner's release was revoked because "ICE has obtained a travel document and scheduled your removal to take place no later than April 30, 2026." *Id*.

Also on April 20, 2026, ICE served Petitioner with a Notice of Imminent Removal, stating that his expected removal was "April 2026," and that he would remain in ICE custody pending his removal. Dkt. 13-5 at 5, Ex. 5. Finally, an "Informal Interview" form in Petitioner's A-file states that ICE Officer Kim conducted the "initial informal interview" with Petitioner on April 20, 2026. Dkt. 13-5 at 7, Ex. 5. The portion of the form to record Petitioner's "oral response regarding the reasons for revocation" is blank. *Id*. However, the form states that Petitioner did not provide a written statement or documents.[5] *Id*. Thereafter, Petitioner was transferred to NWIPC where he remains detained. Dkt. 12 ¶ 16.

---

[4] Petitioner's Record of Deportable/Inadmissible Alien form dated April 20, 2026, states that an OSUP was revoked on February 16, 2026; however, the name listed for that OSUP is "Vilalay" and not Petitioner. *See* Dkt. 13-6 at 3, Ex. 6.

[5] In his Traverse, Petitioner disputes that the Government conducted this "informal interview" in a manner that satisfies due process. Dkt. 14 at 6. Counsel even suggests it is possible that the interview never took place, noting several perceived deficiencies with the "Informal Interview" form in Petitioner's A-file. *Id*. For example, counsel notes that while the interviewing ICE Officer is listed as a Deportation Officer "Kim," in Portland, Oregon, the Officer did not sign the form and, in fact, Petitioner himself signed at the signature line for "Interviewing Officer." *Id*. They also point out the section for Petitioner's oral statement is blank. *Id*. at 6–7. These perceived deficiencies do not confirm for the Court that the "Informal Interview" never took place. In fact, in an Affidavit of Petitioner filed in support of his Traverse, he does not assert the interview did not occur; rather, he states that in a meeting with his attorney after he was detained, he described what he was told by ICE on April 20, 2026, with regards to his detention and removal, and noted that ICE did not show him the travel document. Dkt. 14-4 ¶ 3, Ex. D.

ORDER DENYING PETITION FOR WRIT OF
HABEAS CORPUS AND MOTION FOR
TEMPORARY RESTRAINING ORDER - 4

On May 1, 2026, Petitioner filed the instant habeas Petition and a Motion for Temporary Restraining Order ("TRO"). Dkt. 1. On that same day, the Court provisionally granted Petitioner's Motion for TRO, prohibiting his removal while the current litigation is pending. Dkt. 9. Additionally, on May 11, 2026, Petitioner filed an emergency motion to reopen his removal proceedings along with an emergency motion for stay of removal with Eloy Immigration Court. Dkt. 12 ¶ 18; Dkt. 1-3, Ex. B.

On May 11, 2026, HQ RIO confirmed that a travel document had been re-issued for Petitioner by the Laos government. Dkt. 12 ¶ 19. Respondents assert that, during the course of this litigation, ICE became aware that this new travel document contains the same misspelling of Petitioner's name and incorrect date of birth, but ERO has sent a request to HQ RIO to resolve the clerical error and expects Laos to issue an updated travel document "expeditiously." *Id*. ¶¶ 19, 22. As such, ERO still plans to remove Petitioner to Laos via a charter flight, pending the outcome of this litigation. *Id*. ¶¶ 21–22. However, Petitioner's motion to reopen his removal proceedings remain pending in the Eloy Immigration Court. *Id*. ¶ 20.

## II.     LEGAL STANDARD

Federal courts have authority to grant writs of habeas corpus to individuals in custody if such custody is a "violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and...the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). To obtain habeas relief, habeas petitioners have the burden of demonstrating there is no lawful basis for their detention by a preponderance of the evidence. *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004); 28 U.S.C. § 2241(c).

ORDER DENYING PETITION FOR WRIT OF
HABEAS CORPUS AND MOTION FOR
TEMPORARY RESTRAINING ORDER - 5

## III.   DISCUSSION

Petitioner contends his re-detention, including his same-day notice, interview, and detention, violated applicable regulations and his due process rights because he was not provided with a meaningful individualized determination before a neutral decisionmaker. *See* Dkt. 1 ¶ 44; *See generally*, Dkt. 1. Respondents counter that Petitioner's regulatory and due process claims fail because the Government complied with all applicable regulations by providing notice, an interview, and a removal notice contemporaneously with detention. Dkt. 11 at 11–15.

The Due Process Clause of the Fifth Amendment prohibits the federal government from depriving any person of "life, liberty, or property, without due process of law[.]" U.S. CONST. amend. V. The right to due process extends to "all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). Determining whether an administrative procedure provides the process constitutionally due:

> generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

ORDER DENYING PETITION FOR WRIT OF
HABEAS CORPUS AND MOTION FOR
TEMPORARY RESTRAINING ORDER - 6

*Id.* at 335. Further, in *Rodriguez Diaz v. Garland*, the Ninth Circuit assumed without deciding that *Mathews'* three-part test applies in "the immigration detention context." 53 F.4th 1189, 1206–07 (9th Cir. 2022).

Here, the Court will address whether, under *Mathews*, Petitioner has been afforded due process in connection with his re-detention.

**A.    *Mathews* Factors**

       1.    Petitioner Has a Protected Interest in His Liberty

Under the first *Mathews* factor, the Court determines the private interest to be affected by the official action. Petitioner's interest in not being detained is "the most elemental of liberty interests[.]" *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). "Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action." *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992); *see also Zadvydas*, 533 U.S. at 696 (finding that a non-citizen has a liberty interest "strong enough" to challenge "indefinite and potentially permanent" immigration detention).

A released individual has an "opportunity 'to form the [ ] enduring attachments of normal life'" and thus has a heightened liberty interest, such as those which led the Supreme Court in *Morrisey* to impose due process requirements on parolees where the state seeks to revoke parole. *Carballo v. Andrews*, No. CV25-978-KES-EPG (HC), 2025 WL 2381464, at *4 (E.D. Cal. Aug. 15, 2025) (citing *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)).

Here, Petitioner lived in the community for over twenty (20) years under supervision and developed substantial community ties. Accordingly, the first *Mathews* factor favors Petitioner. *See Makuey v. Scott*, No. 2:26-CV-00632, 2026 WL 925647, at *4 (W.D. Wash. Apr. 6, 2026)

ORDER DENYING PETITION FOR WRIT OF
HABEAS CORPUS AND MOTION FOR
TEMPORARY RESTRAINING ORDER - 7

(holding the first factor favored a petitioner who had been out on an OSUP and was subject to a 2012 final order of removal to South Sudan with pending travel documents to South Sudan).

### 2. The Risk of Erroneous Deprivation Is Low

The second *Mathews* factor examines "the risk of an erroneous deprivation of [the petitioner's private] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards[.]" *Mathews*, 424 U.S. at 335.

The relevant statutory framework permits detention of noncitizens subject to a final order of removal during the removal period and contemplates a 90-day removal period. 8 U.S.C. § 1231(a)(1). Once removal is no longer reasonably foreseeable, continued detention is not authorized. *Zadvydas*, 533 U.S. at 699. As is relevant here, in *Saechao v. Scott*, No. 2:26-CV-00548-TMC, 2026 WL 626765, at *4 (W.D. Wash. Mar. 5, 2026), the Court found that, "[b]ecause ICE did not detain Petitioner until it had secured a travel document, it is unlikely that detaining him to facilitate that removal is erroneous, even without a hearing." The Court further explained that if removal does not occur, the petitioner may seek relief under *Zadvydas*, and that this post-deprivation remedy, together with the regulatory framework, sufficiently protects the petitioner's "liberty interest in being free from indefinite detention when removal is not foreseeable." *Id*. at *5.

Here, ICE provided Petitioner with a Notice of Revocation and Release stating that release had been revoked pursuant to 8 C.F.R. § 241.4(l) because "ICE has obtained a travel document and scheduled your removal to take place no later than April 30, 2026." Dkt. 13-5 at 2, Ex. 5. In addition, Respondents confirm the issuance of a second travel document, issued on May 11, 2026. Dkt. 12 ¶ 19. Petitioner was also given an informal interview "to respond to the reasons for revocation of his or her order of supervision stated in the notification letter" and

ORDER DENYING PETITION FOR WRIT OF
HABEAS CORPUS AND MOTION FOR
TEMPORARY RESTRAINING ORDER - 8

made no oral or written statement or provided documents. *Id*. at 7, Ex. 5. That same day, Petitioner was served a Notice of Imminent Removal pursuant to 241.4(g)(4). *Id*. at 5, Ex. 5 (the relevant statute states "Removal. The Service will not conduct a custody review under these procedures when the Service notifies the alien that it is ready to execute an order of removal.").

Similar to *Xiong*, where the Court denied the due process claim, there is no indication within the instant record that Petitioner has asserted a fear of removal to Laos. *See Xiong v. Wofford*, No. 1:25-CV-2004 CSK, 2026 WL 177739 (E.D. Cal. Jan. 22, 2026). Petitioner argues that, because ICE did not provide him with any evidence of changed circumstances, a verbal explanation, or an opportunity to be heard before a neutral decisionmaker prior to re-detention, these factors have "created not only a risk, but an actual and materialized erroneous deprivation of his liberty." Dkt. 1 at 18–19. But ICE followed its agency regulations, and the risk of erroneous detention is low when, as here, ERO secured a valid travel document prior to re-detention.[6]

Accordingly, the second *Mathews* factor weighs in the Government's favor.

3.    The Government Has a Valid Interest in the Orderly Administration of Removal Proceedings

The government "has a legitimate interest in ensuring that a noncitizen subject to a final order of removal appears when necessary to facilitate removal." *See Saelee v. Bondi*, No. 2:25-CV-02677-TLF, 2026 WL 221513, at *6 (W.D. Wash. Jan. 28, 2026) (citing *Tran v. Bondi*, No. 2:25-CV-02335-DGE-TLF, 2025 WL 3725677, at *3 (W.D. Wash. Dec. 24, 2025)). That interest

---

[6] In the Traverse, Petitioner notes recently a motion to vacate his 2007 felony conviction in California, the offense causing him to be removable under 8 U.S.C. § 1227(a)(2)(A)(iii), was granted, and Petitioner was permitted to enter a plea of no contest to the third count of the charges. *See* Dkt. 14 at 2–3; Dkt. 14, Exs. A–C. Petitioner asserts counsel plans to amend his motion to reopen removal proceedings with these changes circumstances. Dkt. 14 at 3. As such, Petitioner's removal proceedings remain pending.

ORDER DENYING PETITION FOR WRIT OF
HABEAS CORPUS AND MOTION FOR
TEMPORARY RESTRAINING ORDER - 9

is "[s]tronger yet…where, as here, the government has shown that removal is likely to occur in the reasonably foreseeable future." *Saechao*, 2026 WL 626765, at *5; *see also Prieto-Romero v. Clark*, 534 F.3d 1053, 1063 (9th Cir. 2008). The Government has an interest in detaining noncitizens to effectuate their removal. *Makuey v. Scott*, 2026 WL 925647, at *4.

Here, ERO obtained a valid travel document prior to re-detaining Petitioner and complied with applicable regulations in revoking Petitioner's OSUP, providing Petitioner adequate due process. *See id.* ("Here, where Respondents had a valid travel document, and followed 8 C.F.R. § 241.4(l) in revoking Petitioner's Order of Supervision, Petitioner has received due process."). Thus, the third *Mathews* factor favors the Government.

Considering these factors together, the Court finds that the *Mathews* factors weigh in the Government's favor overall. Accordingly, the Court **DENIES** Petitioner's due process claim.

**B.    Administrative Procedures Act ("APA") Claims**

Petitioner also claims Respondents violated the APA by revoking Petitioner's OSUP and detaining him. Dkt. 1 ¶¶ 40–52. In their Return, Respondents argue the Court lacks jurisdiction to hear these claims because there is an adequate and exclusive statutory remedy through habeas relief. Dkt. 11 at 16–17 ("federal courts lack jurisdiction over APA challenge whenever Congress has provided another 'adequate remedy'") (quoting *Brem-Air Disposal v. Cohen*, 156 F.3d 1002, 1004 (9th Cir. 1998)). The Court agrees. Because Petitioner seeks relief via habeas corpus, his APA claims here fail for lack of jurisdiction.

**C.    Motion for TRO**

Petitioner has also filed a Motion for TRO seeking to stay his removal prior to resolution of this federal habeas action. Dkt. 2. The Court provisionally granted Petitioner's TRO "solely for the purpose of maintaining the status quo so that the Court may review the merits of the

ORDER DENYING PETITION FOR WRIT OF
HABEAS CORPUS AND MOTION FOR
TEMPORARY RESTRAINING ORDER - 10

Motion after full briefing." Dkt. 9 at 3. As this Court has now reviewed Petitioner's claims and determined that Petitioner is not entitled to the relief he seeks by way of this federal habeas action, *i.e.*, release from custody, his Motion for TRO (Dkt. 2) is effectively **MOOT**. *See Sandhu v. Noem*, No. 2:26-CV-00465-TLF, 2026 WL 607701, at *1 (W.D. Wash. Mar. 4, 2026) (citing *Louangmilith v. Noem*, 808 F. Supp. 3d 1139, 1141 (S.D. Cal. 2025).

## IV.   CONCLUSION

For the reasons set forth above, Petitioner's Petition for writ of habeas corpus (Dkt. 1) is **DENIED**. Moreover, Petitioner's Motion for a TRO (Dkt. 2) is **DENIED as moot**.

Dated this 17th day of June, 2026.

Grady J. Leupold
United States Magistrate Judge

ORDER DENYING PETITION FOR WRIT OF
HABEAS CORPUS AND MOTION FOR
TEMPORARY RESTRAINING ORDER - 11